356 S.E.2d 573 (1987)
319 N.C. 634
STATE of North Carolina
v.
Martha Jean ISLEIB.
No. 397PA86.
Supreme Court of North Carolina.
June 2, 1987.
*574 Lacy H. Thornburg, Atty. Gen. by John H. Watters, Asst. Atty. Gen., Joan H. Byers, Sp. Deputy Atty. Gen., Raleigh, for the State, appellant.
Aldridge, Seawell & Khoury by G. Irvin Aldridge, Manteo, for defendant.
North Carolina Ass'n of Police Attorneys by Robert F. Thomas, Jr., Randolph B. Means and Stephanie W. Harris, Charlotte, amicus curiae.
MARTIN, Justice.
The issue before us on appeal is whether, under the facts of this case, a valid search warrant was necessary to conduct a lawful search of a vehicle. For the reasons which follow, we hold that a search warrant was not required.
The evidence presented at voir dire on defendant's motion to suppress tended to establish the following: Sometime between 2:00 and 4:00 p.m. on 5 April 1985, Dare County Deputy Sheriff C.H. Midgette and another deputy met in the county courthouse with a confidential informant. Midgette had received information from this informant on approximately three prior occasions; on each of these occasions, the information provided had yielded arrests and convictions in drug cases involving *575 marijuana. During the course of their 5 April meeting, the informant told the deputies that a woman named "Martha" would be coming to Hatteras Island from the beach area north of Oregon Inlet the following day, that she would be driving her Army-green Dodge or Plymouth station wagon with letters or a decal on the door, that she would be accompanied by a white male whom the informant did not know, and that she would be delivering quarter-ounce bags of marijuana. The informant did not know Martha's last name, nor did he know her address other than the fact that she lived "at the beach." Midgette testified that upon receiving the information, he realized that he was familiar with the car described, that he knew who Martha was, that he had known her for seven or eight years, and that she lived at the beach north of Oregon Inlet. He did not attempt to secure a search warrant.
At about 12:35 p.m. on 6 April, about twenty hours after having received the tip from the informant, Midgette was northbound in his patrol car on N.C. Highway 12 just north of the village of Waves on Hatteras Island when he saw a green station wagon similar to that described by the informant proceeding in a southerly direction. He recognized the driver was Martha. Midgette went to his residence, telephoned Deputy John Gray, who was off duty, advised him as to the whereabouts of the green car, and told him to "get dressed and hit the road." Shortly thereafter, Gray radioed Midgette and informed him he had spotted the suspect car. Midgette advised Gray that he was about a mile away and to "go ahead and stop her," and Gray thereupon intercepted the vehicle. Midgette arrived minutes later to find Gray and the defendant standing beside the green station wagon and the white male still seated on the passenger's side. Midgette told defendant that he possessed information that she was en route to Hatteras to deliver quarter-ounce bags of marijuana and that he was going to search her car on the basis of an "emergency stop." Defendant asked him if he had a search warrant, and he responded that he did not. Defendant was not arrested at that time and did not consent to the search.
Although no contraband was in plain view, Midgette proceeded to conduct a search of the car. He first took defendant's pocketbook from the front seat and handed it to Gray, who got in his patrol car with defendant. Upon a search of the pocketbook, Gray announced that he had found a bag of marijuana. When Midgette asked the passenger if he had anything in his pockets, the man reached into his left trousers pocket and pulled out a very small amount of marijuana. Thereupon defendant said, "Do not arrest Randy. I gave him the herb this morning." Midgette then got into the car and saw a small, multi-colored bag from which several smaller bags protruded. Each of the smaller bags contained a quarter-ounce of marijuana. Defendant and her companion were then arrested and transported to Manteo. The contents of the bags were analyzed by the State Bureau of Investigation and were found to total forty-two grams of marijuana. Defendant was indicted for felonious possession of marijuana and felonious possession of marijuana with intent to sell.
Following the suppression hearing, the trial judge made findings of fact and conclusions of law holding that the warrantless search of defendant's car was illegal and ordered the suppression of all evidence obtained as a result of the search. Upon appeal by the state, the Court of Appeals affirmed the ruling of the trial court. We reverse the Court of Appeals.
In a series of decisions beginning with Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the United States Supreme Court has held that a search warrant is not a prerequisite to the carrying out of a search based upon probable cause of a motor vehicle on public property.[1] The so-called "automobile exception" to the warrant requirement carved out by Carroll and its progeny is founded *576 upon two separate but related reasons: the inherent mobility of motor vehicles which makes it impracticable, if not impossible, for a law enforcement officer to obtain a warrant for the search of an automobile while the automobile remains within the officer's jurisdiction, id., and the decreased expectation of privacy which citizens have in motor vehicles, United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), which results from the physical characteristics of automobiles and their use. Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). In California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the Supreme Court elaborated on its rationale for the warrant exception, saying that warrantless searches of motor vehicles were sanctioned because "the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met."[2] 471 U.S. at 392, 105 S.Ct. at 2070, 85 L.Ed.2d at 414. This statement served to reiterate, clarify, and reinforce the Court's earlier statement in Cardwell v. Lewis, 417 U.S. 583, 595, 94 S.Ct. 2464, 2472, 41 L.Ed.2d 325, 338, that
[a]ssuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest.... The exigency may arise at any time ....
A search of a motor vehicle which is on a public roadway or in a public vehicular area is not in violation of the fourth amendment if it is based on probable cause, even though a warrant has not been obtained. United States v. Ross, 456 U.S. 798, 809, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572, 584.
In the case sub judice, the Dare County Sheriff's Department had sufficient information to constitute probable cause on 5 April after receiving the informant's tip. However, the officer acted reasonably, prudently, and responsibly in delaying any attempt to locate the vehicle and search it until he actually observed the automobile on the highway and recognized it and its occupants. The officer had no information that a search immediately after he received the tip would be fruitful. Moreover, he was not required, under the circumstances of this case, to obtain a search warrant, because the suspect's car was moving along the public highway. Once Midgette saw and recognized the moving automobile which had been described to him in the informant's tip, he could properly execute a valid search under the automobile exception to the warrant requirement under Carroll and its progeny. The fact that the officer has probable cause to secure the search warrant and adequate time to obtain one, but fails to do so, does not vitiate the rule of Carroll. We hold that no exigent circumstances other than the motor vehicle itself are required in order to justify a warrantless search of a motor vehicle if there is probable cause to believe that it *577 contains the instrumentality of a crime or evidence pertaining to a crime and the vehicle is in a public place.
Nothing in our decision today alters in any respect the requirements for establishing probable cause in motor vehicle cases; we are following the well-established rule that a search warrant is not required before a lawful search on probable cause of a motor vehicle in a public area may take place. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572. As we have explained, this result obtained because of the two factors which set motor vehicles apart from most other places and things which could be subject to a search their inherent mobility and the decreased expectation of privacy in them. In short, the inherent mobility of the automobile is itself the exigency. See State v. Jones, 295 N.C. 345, 245 S.E.2d 711 (1978); State v. Russell, 84 N.C.App. 383, 352 S.E.2d 922 (1987); United States v. Hensler, 625 F.2d 1141 (4th Cir.1980), cert. denied, 450 U.S. 980, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981); United States v. Whitfield, 629 F.2d 136 (D.C. Cir.1980), cert. denied, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981); United States v. Gooch, 603 F.2d 122 (10th Cir.1979); United States v. Bain, 736 F.2d 1480 (11th Cir.1984), cert. denied, 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984); State v. Lowe, 485 So.2d 99 (La.App.1986), writ denied, 488 So.2d 199 (La.1986); State v. Banner, 685 S.W.2d 298 (Tenn.Crim. App.1984); Williams v. State, 173 Ga.App. 207, 325 S.E.2d 783 (1984); State v. Gardner, 10 Kan.App.2d 408, 701 P.2d 703 (1985); People v. Futrell, 125 Mich.App. 568, 336 N.W.2d 834 (1983); State v. Camargo, 126 N.H. 766, 498 A.2d 292 (1985). However, this is not to say that every automobile case will involve exigent circumstances; the situation in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), is a case in point. In Coolidge, the automobile which officers desired to search was parked in defendant's driveway on private property and within the curtilage of defendant's home. Further, the other case upon which defendant relies, Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), is not applicable to the facts of this case. The automobile exception to the warrant requirement was not implicated in Gates, where officers obtained a search warrant for the vehicle.
Although Deputy Midgette had probable cause to secure a search warrant based upon the informant's tip, he was not required to apply immediately for the warrant. An officer can wait, investigate further, and secure additional information before applying for a search warrant. We see no reason to put officers on a timetable within which to apply for search warrants. If twenty hours is too long to wait, as defendant insists, what about sixteen hours, or ten hours? The courts should not decide the validity of searches on this basis. Further, there are often valid reasons to delay the issuance of warrants. Usually, search warrants are issued as close as possible to the time of execution of the warrant because the longer a warrant is outstanding the greater the likelihood that a defendant will be apprised of the proposed search.
We further conclude that the law and reasoning applicable to the fourth amendment in this case is also determinative of defendant's rights under the Constitution of North Carolina. We hold that none of defendant's rights under the fourth amendment of the Constitution of the United States or the Constitution of North Carolina were violated by the search of her vehicle.
We hold that both the trial court and the Court of Appeals erred in holding that the seized evidence should be suppressed. Accordingly, the decision of the Court of Appeals is reversed, and the case is remanded to that court for remand to the Superior Court of Dare County for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
FRYE, J., concurs in result only.
WHICHARD, J., did not participate in the consideration or decision of this case.
NOTES
[1] The following are United States Supreme Court opinions filed since the decision in Carroll was announced in 1925 which have approved warrantless probable cause searches of motor vehicles in public areas: California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); United States v. Johns, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985); Florida v. Meyers, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984); Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982); United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); Colorado v. Bannister, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980); Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931).
[2] Such governmental regulations and controls include, for example, periodic inspection and licensing requirements. In addition, "[a]s an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order." South Dakota v. Opperman, 428 U.S. 364, 368, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1004 (1976); see also New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (discussion of the pervasive schemes of regulations pertaining to motor vehicles).