James Mewbourn and Elbert ("Dale") Suggs were separately charged in two-count indictments with trafficking in cocaine and possession of marihuana. Both filed motions to suppress, which were denied after a hearing. Mewbourn and Suggs then pleaded guilty to the trafficking charges, although reserving the right to appeal the denial of their motions to suppress. The possession counts were nonprossed on motion of the State. Both Mewbourn and Suggs were sentenced to three years' imprisonment and were fined $50,000. Because the charges arose out of the same facts and because the dispositive issues in each case are the same, we have elected to dispose of both cases with one opinion.
Three Jefferson County deputy sheriffs testified at the preliminary hearing. The transcript of this hearing was offered as evidence at the hearing on the motions to suppress. From this transcript we glean the following facts:
On September 11, 1987, Sgt. Charles Horton of the Jefferson County Sheriff's Department met with a reliable informant who stated that he had overheard a conversation between James Mewbourn and Dale Suggs. According to the informant, Suggs told Mewbourn that they could leave by boat on Saturday, September 12, "to go to Mobile and pick up a load of cocaine." This informant stated that he had been present at a certain barbecue restaurant "a couple of days before 9-11-87 and had seen Dale Suggs and James Mewbourn with cocaine." The informant also told Sgt. Horton that a boat with registration number AL4967SB was docked at Clevenger's Marina. After meeting with the informant, Horton went to the marina, where he observed and photographed a houseboat with registration number AIA967SB. He learned from other officers that this boat had been purchased by Suggs from Captain Willie Hughes of the West Jefferson Correctional Facility some three weeks previously.
On Saturday, September 12, Sgt. Horton again went to the marina. The houseboat was gone, but a Lincoln automobile bearing a Mississippi license plate was parked about 20 yards from the dock where the houseboat had been. This car was registered to Mewbourn. Horton had personally observed this same automobile parked at Suggs' residence on prior occasions.
Horton checked the marina at 7:20 a.m. and 5:10 p.m. on Sunday and at 9:15 a.m. and 2:00 p.m. on Monday and found the houseboat still absent and the Lincoln still parked near the dock. At 2:45 p.m. on Monday, he met again with his informant, who stated that Suggs and Mewbourn would return from Mobile that week and would have cocaine in their possession.
On Tuesday morning Sgt. Horton obtained a search warrant for the houseboat.[1] *Page 807 
At 12:45 p.m. Tuesday and 7:00 a.m. Wednesday, he checked the marina and found the scene unchanged. On Thursday morning Deputy Kilborn and FBI agents "flew the river looking for the boat with registration number Alabama 4967SB." This boat was located "approximately thirty miles north of Mobile headed north." Sgt. Horton checked the marina at 6:30 a.m. and 5:00 p.m. on Friday and found no change. He met with his informant again on Saturday morning at 7:40 a.m. The informant stated that he had learned that Suggs and Mewbourn would return to the marina that day. At no time during the three meetings with Horton did the informant ever specify the quantity of cocaine which Suggs and Mewbourn would have or the type of container(s) in which the cocaine would be transported.
At 11:35 a.m. on Saturday, Sgt. Horton and Deputy Kilborn observed the houseboat enter the Holt Lock and Dam near Tuscaloosa. On the boat were Suggs, Mewbourn, and Billy Dill. Horton and Kilborn then drove to Lock 17, where they observed the arrival of the houseboat at 3:45 p.m. At 6:30 p.m., the houseboat "got completely through Lock 17" and was thereafter followed up the river to the marina by Deputy Billy James and another officer in a fishing boat.
After the houseboat docked, Deputy James observed Mewbourn step off the boat carrying a blue suitcase, which he placed on the dock. Mewbourn then backed the Lincoln down to the dock. Dill placed some coolers and fishing rods on the dock and Suggs placed a suitcase and an orange thermos on the dock. Mewbourn and Dill loaded these items into the Lincoln while Suggs locked the houseboat. All three men then got into the Lincoln, with Mewbourn in the driver's seat. As the Lincoln began to move, 15 officers (one Customs official, four FBI agents, and ten Jefferson County deputy sheriffs), some with guns drawn, converged on the vehicle and ordered the three occupants to exit the car. The search warrant for the houseboat was served on Suggs, and both the boat and the Lincoln were searched. No controlled substances were found on the houseboat. However, cocaine and marihuana were found in the Lincoln. The marihuana was found in the blue suitcase which Mewbourn had placed in the back seat of the car, and the cocaine was found in the orange thermos located in the trunk.
 I
The defendants argue that the warrantless search of the car violated their Fourth Amendment rights. We disagree.
"It is well established that, although the Fourth Amendment prohibits only unreasonable searches, all searches without a warrant are deemed per se unreasonable unless they fall within certain recognized exceptions to the warrant requirement."McClellan v. State, 415 So.2d 1238, 1239 (Ala.Cr.App. 1982). One of the recognized exceptions is the automobile or vehicle exception. First set forth by the United States Supreme Court in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280,69 L.Ed. 543 (1925), the rationale behind this exception was discussed at length in California v. Carney, 471 U.S. 386,105 S.Ct. 2066, 85 L.Ed.2d 406 (1985):
 "[A]lthough ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for the vehicle exception, we have said, are twofold. [South Dakota v. Opperman, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000
(1976)]. 'Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.' Ibid.
 "Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its *Page 808 
use as a readily mobile vehicle justified application of the vehicular exception. See, e.g., Cady v. Dombrowski, 413 U.S. eg. 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)]. In some cases, the configuration of the vehicle contributed to the lower expectations of privacy. . . . But even when enclosed 'repository' areas have been involved, we have concluded that the lesser expectations of privacy warrant application of the exception. . . .
 "These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways. Cady v. Dombrowski, supra, 413 U.S., at 440-441, 93 S.Ct., at 2527-2528. As we explained in South Dakota v. Opperman, an inventory search case:
 " 'Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.' 428 U.S., at 368, 96 S.Ct., at 3096.
"The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation. Historically, 'individuals always [have] been on notice that movable vessels may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband, without the protection afforded by a magistrate's prior evaluation of those facts.' [United States v. Ross,456 U.S. 798, 806 n. 8, 102 S.Ct. 2157, 2163 n. 8, 72 L.Ed.2d 572
(1982)]. In short, the pervasive schemes of regulation, whichnecessarily lead to reduced expectations of privacy, and theexigencies attendant to ready mobility justify searches withoutprior recourse to the authority of a magistrate so long as theoverriding standard of probable cause is met.
 "When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes — temporary or otherwise — the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable."
Carney, 471 U.S. at 391-93, 105 S.Ct. at 2069-70 (emphasis added, footnote omitted).
In the present case, the Lincoln was found stationary in a place not regularly used for residential purposes, and was clearly capable of use on the highways. Thus, the justifications for the vehicle exception come into play. It only remains for us to determine whether probable cause existed to search the Lincoln.
It has been stated many times that "[p]robable cause deals with probabilities, not legal technicalities. It is grounded upon those practical, factual considerations of everyday life upon which reasonable and prudent men act. Brinegar v. UnitedStates, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948)."Carter v. State, 405 So.2d 957, 959 (Ala.Cr.App.), cert. denied, 405 So.2d 962 (Ala. 1981). "Probable cause does not require an officer to compile an airtight case against a suspect." Williams v. State, 440 So.2d 1139, 1145 (Ala.Cr.App. 1983). "It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband . . . it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required."Texas v. Brown, *Page 809 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (citations omitted).
Applying these principles to the facts of the case at bar, we find that probable cause existed for the search of the Lincoln. Sgt. Horton had received information from a reliable informant that the defendants were traveling by boat to Mobile to pick up cocaine.[2] Horton and other officers verified several aspects of the informant's tip, such as the facts that the houseboat described by the informant had been recently purchased by Suggs and that the houseboat was missing from the marina on the date on which Suggs had said that he and Mewbourn could leave. Later in the week, officers observed the boat some 30 miles north of Mobile, the defendants' avowed destination. On Saturday, the day the defendants returned to the marina, the officers watched the defendants dock and unload the boat. There were several items taken from the boat and placed in the car which could have contained cocaine.
The defendants maintain that since the informant did not tell Sgt. Horton what type of container would be utilized to transport the cocaine, the unloading of several innocuous-looking items from the boat to the car did not give rise to probable cause to believe that any of those items contained cocaine. Suggs argues that there was no evidence to support the conclusion that "the item to be searched for (cocaine) was moved from the boat to the car." Brief of Appellant Suggs at 10.
We hold that once the boat was unloaded and several itemscapable of containing cocaine were placed in the car, there was probable cause to search the car. This holding is based on the common-sense deduction from the totality of the circumstances here that it was reasonably likely — though not certain, or even more probable than not — that when the boat was unloaded, some or all of its contraband was removed. Compare UnitedStates v. Johns, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890
(1985). In Johns, the Supreme Court, viewing the off-loading of packages from airplanes to pickup trucks in light of information received and subsequent surveillance, observed that "[t]he events surrounding the rendezvous of the aircraft and the pickup trucks at the isolated desert airstrip indicated that the vehicles were involved in smuggling activity."469 U.S. at 482, 105 S.Ct. at 884. See also United States v. Capo,693 F.2d 1330 (11th Cir. 1982), cert. denied, 460 U.S. 1092,103 S.Ct. 1793, 76 L.Ed.2d 359 (1983). In Capo, officers had information that marijuana was to arrive in a specific boat and would subsequently be loaded into a particularly described truck. On the night of the delivery, the truck was accompanied by a van, about which the officers had no information or knowledge. The court held that there was "ample cause to connect the van with the marijuana. Agents could properly have searched the van on the spot without a warrant because probable cause existed to believe the van contained contraband."693 F.2d at 1337.
While we acknowledge that there were no facts known by the officers which made the presence of cocaine in any of the containers placed in the car a certainty, or even more probable than its presence on the unloaded boat, neither certainty nor a 50%-plus probability is demanded by the concept of probable cause. See generally 1 W. LaFave, Search Seizure § 3.2(e) at 598 n. 184 and 599-600 (2d ed. 1987). The officers here could reasonably assume that the Lincoln was at the boat dock for the *Page 810 
purpose of facilitating the transport of smuggled contraband, and that contraband was, in fact, among the items loaded from the boat into the Lincoln.
In State v. Tompkins, 144 Wis.2d 116, 423 N.W.2d 823 (1988), Lyons agreed to sell an undercover officer a half pound of cocaine. At the appointed time, Lyons delivered only a quarter pound to the officer, stating that his supplier, Tompkins, was driving a pickup truck in the vicinity and had the other quarter pound. Surveillance officers in the area located Tompkins and followed him. Tompkins stopped and entered a gas station and later a tavern, where he was arrested. His truck was searched without a warrant. Tompkins argued that he could have secreted the cocaine in the gas station or in the tavern and the officers had no probable cause to believe the cocaine was "at the particular location searched," i.e., his truck.144 Wis.2d at 123, 423 N.W.2d at 826. In disposing of this argument, the Wisconsin court provided an answer to the argument of the defendants here:
 "We have no quarrel with this proposition; however, we do not believe that the concept of probable cause is so constrained as to mean 'a particular location . . . and not at any other location.' . . .
". . . .
 "We hold that where there is evidence that would lead a reasonable person to conclude that the evidence sought is likely to be in a particular location — although there may be other evidence that could lead a reasonable person to conclude that the evidence may instead be in another location — there is probable cause for a search of the first location. The search of the first location is appropriate although there may also be probable cause to believe the evidence may be in the second or third location."
State v. Tompkins, 144 Wis.2d at 123-125, 423 N.W.2d at 826,827.
 II
In connection with the issue presented in Part I of this opinion, the defendants also argue that the officers should have obtained a search warrant for the Lincoln because the officers knew of its location for a week prior to the search and also planned during that week to search the car upon the defendants' return. This is essentially a lack-of-exigent-circumstances argument.
After California v. Carney, several courts have indicated that probable cause is the linchpin of the automobile exception and that a vehicle's potential for mobility raises the presumption of exigent circumstances. See e.g., United Statesv. Markham, 844 F.2d 366, 369 (6th Cir.), cert. denied,488 U.S. 843, 109 S.Ct. 116, 102 L.Ed.2d 90 (1988) ("the Carney
majority held that whenever a vehicle is readily capable of use on public roads, the automobile `exception is applicable");United States v. Bagley, 772 F.2d 482, 491 (9th Cir.) (inCarney, "the Court makes clear that under the automobile exception, probable cause alone suffices to justify a warrantless search of a vehicle lawfully parked in a public place, so long as the scope of the search is reasonable") cert. denied, Bagley v. United States, 475 U.S. 1023, 106 S.Ct. 1215,89 L.Ed.2d 326 (1985); State v. Isleib, 319 N.C. 634, 638,356 S.E.2d 573, 576-77 (1987) ("no exigent circumstances other than the motor vehicle itself are required in order to justify a warrantless search of a motor vehicle if there is probable cause to believe that it contains the instrumentality of a crime or evidence pertaining to a crime and the vehicle is in a public place"). See generally 3 W. LaFave, Search and Seizure § 7.2(b) at 37-41 (2d ed. 1987). This court adopted that position in Stanfield v. State, 529 So.2d 1053, 1060 (Ala.Cr.App. 1988), holding that "generally, a vehicle may be searched on probable cause without a warrant and without a demonstration of any exigent circumstances other than its own inherent or ready mobility." See also Reid v. State, 388 So.2d 208, 209 (Ala. 1980) (a pre-Carney case indicating that exigent circumstances for the warrantless search of a parked vehicle were created by the inherent mobility of the vehicle).
Moreover, while the testimony of the officers clearly establishes that probable *Page 811 
cause existed to search the Lincoln after the defendants unloaded the boat and placed several items which could have contained contraband in the vehicle, it does not clearly appear that probable cause existed to search the Lincoln prior to this activity. Compare United States v. Errera, 616 F. Supp. 1145,1153 (D.Md. 1985) (in response to accused's argument that agents should have obtained a search warrant for his vehicle when they learned he was to visit the residence of drug supplier Errera, court noted that agents "would not have had probable cause to obtain a search warrant for any vehicle untilafter it left the Errera residence") (emphasis in original). The officers did know of the presence of the car at the marina for a week. However, this was the week during which the defendants were afloat on the houseboat and, according to their conversation as overheard by the informant, obtaining the cocaine. Several officers testified that their plan was to allow the defendants to dock, unload the boat, and enter the car before arresting them, in order to prevent any of the contraband from being thrown in the river and destroyed. It is conceivable that the defendants could have simply disembarked without unloading anything from the boat. It could be argued that the officers had no way of knowing with any certainty that the defendants would actually unload the boat. In any event, "[t]he fact that the officer has probable cause to secure [a] search warrant and adequate time to obtain one, but fails to do so, does not vitiate [a search conducted under the automobile exception]." State v. Isleib, 319 N.C. at 638,356 S.E.2d at 576 (warrantless search of vehicle conducted some 20 hours after receiving a tip from a reliable informant). Cf. State v.Hammac, 546 So.2d 392, 396 (Ala.Cr.App. 1989) (where "officers could not be sure when the defendants would make the transaction or in which vehicle they would transport the marijuana," there was no necessity to procure a warrant for the search of the vehicle, even though there was time to obtain one and a warrant was obtained for their residence).
"[In automobile search] cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained."United States v. Ross, 456 U.S. 798, 809, 102 S.Ct. 2157,2164-65, 72 L.Ed.2d 572 (1982).
 " '[T]he real question is not what "could have been achieved," but whether the Fourth Amendment requires such steps. . . .
 " 'The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.' "
Illinois v. Lafayette, 462 U.S. 640, 647, 103 S.Ct. 2605, 2610,77 L.Ed.2d 65 (1983) (as quoted in Colorado v. Bertine,479 U.S. 367, 374, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987) (emphasis added by the Lafayette Court). See also United Statesv. Johns, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (wherein the Court upheld the warrantless search of packages three days after their removal from vehicles for which probable cause to search existed, notwithstanding existence of ample time to obtain search warrants).
The defendants also argue that once the Lincoln had been immobilized and surrounded by 15 law enforcement officers, there were no longer any truly exigent circumstances excusing the failure to obtain a search warrant. As the Supreme Court has observed, however, "the justification to conduct . . . a warrantless search does not vanish once the car has been immobilized." Michigan v. Thomas, 458 U.S. 259, 261,102 S.Ct. 3079, 3080-81, 73 L.Ed.2d 750 (1982), quoted in United Statesv. Johns, 469 U.S. at 484, 105 S.Ct. at 885.
 III
Defendant Mewbourn argues that the warrantless search of the thermos bottle in which the cocaine was found was unconstitutional. We find that the search of the thermos was within the scope of the search of the automobile.
In United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157,72 L.Ed.2d 572 (1982), the Supreme Court made it clear that just as *Page 812 
probable cause is the linchpin for the application of the automobile exception, it is also the key to determining the scope of the search:
 "The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab."
Ross, 456 U.S. at 824, 102 S.Ct. at 2172.
After the defendants were observed transferring several items from the houseboat to the Lincoln, there was also probable cause to believe that some or all of the cocaine had been transferred to the car. Consequently, there was probable cause to search the containers transferred to the car, including the thermos, in which cocaine might be secreted.
In this case, there was probable cause to believe that cocaine had been transported on the boat.
 "[T]he scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower that a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."
Ross, 456 U.S. at 825, 102 S.Ct. at 2173.
 IV
The defendants contend that the evidence is insufficient to support their convictions, each asserting that he lacked the requisite knowledge of the presence of the cocaine. At the same proceeding, the defendants both pleaded guilty to trafficking in cocaine. Neither defendant contends that his guilty plea was not voluntarily or knowingly entered, and each record contains the Boykin[3] colloquy conducted by the trial court. During this colloquy, the trial court stated: "I read the preliminary hearing transcript and from that transcript I'm satisfied there is sufficient evidence upon which you can base your guilty plea. But a guilty plea is just that, an admission of guilt." (Emphasis added.) Neither defendant objected at this point or otherwise preserved this issue for appellate review.
In Wooten v. State, 455 So.2d 991 (Ala.Cr.App. 1984), the defendant pleaded guilty to trafficking in marihuana, reserving his right to appeal the denial of his motion to suppress. On appeal he also asserted that the State had failed to prove that he was in possession of more than 2.2 pounds of marihuana. In rejecting this argument, we stated:
 "A voluntary and intelligent plea of guilty is conclusive as to the defendant's guilt, constitutes an admission of all facts sufficiently charged in the indictment, and obviates the necessity of proof by the State. Dingler v. State, 408 So.2d 530 (Ala. 1981); Ex parte Sankey, 364 So.2d 362 (Ala. 1978), cert. denied, 440 U.S. 964, 99 S.Ct. 1513, 59 L.Ed.2d 779 (1979). The plea admits all elements of the offense. Carr v. State, 406 So.2d 440 (Ala.Cr.App. 1981)."
455 So.2d at 992 (emphasis added). Accord, Russell v. State,428 So.2d 131, 134 (Ala. 1982). Having entered voluntary and knowing guilty pleas, the defendants cannot now complain that the State failed to prove their knowledge of the presence of the cocaine.
The judgment of the Jefferson Circuit Court in each case is affirmed.
AFFIRMED.
All Judges concur. *Page 813 
[1] Although the defendants have challenged the validity of this search warrant, the resolution of that issue is not necessary to the disposition of these cases. We do note, however, that, even if the warrant were invalid, it is possible that the search of the houseboat could be upheld under the automobile exception to the search warrant requirement. In United Statesv. Hill, 855 F.2d 664, 668 (10th Cir. 1988), the court held that the search of a houseboat which was readily mobile and not found in a setting which objectively demonstrated its use as a residence fell within the automobile exception under Californiav. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).
[2] The defendants have asserted that the reliability of this informant was not sufficiently established to enable information received from him to be considered in determining whether probable cause existed. However, Sgt. Horton testified that the informant had provided information within the last six months that had led to four arrests and two convictions. Although Horton was "not sure that [the informant] said" where he was when he overheard the conversation between Mewbourn and Suggs, Horton thought "that he told me he was at the Green Top Barbecue." In any event, the fact that the informant personally overheard the conversation indicates that he was in the vicinity of the defendants and establishes the basis of his knowledge for this particular tip. Under the totality-of-the-circumstances test set forth in Illinois v.Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), we find that the reliability of the informant as to this information was adequately established.
[3] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274
(1969).