IN THE SUPREME COURT OF NORTH CAROLINA

No. 190PA24

Filed 22 May 2026

STATE OF NORTH CAROLINA

v.

TYRON LAMONT DOBSON


On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 293 N.C. App. 450 (2024), affirming a judgment entered on 12 December 2022 by Judge Craig Croom in Superior Court, Guilford County. Heard in the Supreme Court on 9 September 2025.

*Jeff Jackson, Attorney General, by Zachary K. Dunn, Special Deputy Attorney General, for the State-appellee.*

*Benjamin J. Kull for defendant-appellant.*

*Robert C. Montgomery for North Carolina Conference of District Attorneys, amicus curiae; Edmond W. Caldwell Jr. for North Carolina Sheriffs' Association, amicus curiae; and Fred P. Baggett for North Carolina Association of Chiefs of Police, amicus curiae.*

EARLS, Justice.

Earlier North Carolina statutes defined "marijuana" as all parts of the plant "of the genus Cannabis." *Compare* An Act Clarifying that all Species of Marijuana Are Included in the Schedule of Controlled Substances, ch. 491, § 1, 1985 N.C. Sess. Laws 546, 546, *with* North Carolina Controlled Substances Act, ch. 919, § 1, 1971 N.C. Sess. Laws 1477, 1479. Possession of marijuana has long been, and continues to

be, illegal in North Carolina. N.C.G.S. § 90-95 (2025). In 2015, the General Assembly modified the law to provide for the cultivation, sale, possession, and use of what was originally called "industrial hemp," Act of October 31, 2025, S.L. 2015-299, § 2, 2015 N.C. Sess. Laws 1486–87, and then shortened to "hemp" in 2022, Act of June 30, 2022, S.L. 2022-32, § 1, 2022 N.C. Sess. Laws 176, 176–77 (current version at N.C.G.S. § 90-87(13a) (2025)). Because the odor of legal hemp and illegal marijuana are virtually identical, the question arises how that smell can factor into a law enforcement officer's determination of when probable cause exists to conduct a warrantless search consistent with the Fourth Amendment's protection against unreasonable searches and seizures.

In two other pending cases, this Court is also considering this same question. *See State v. Rowdy*, No. 300PA24 (N.C. May 22, 2026) and *State v. Schiene*, No. 305PA24 (N.C. 2026). Today we hold that under applicable federal Fourth Amendment doctrine, we continue to follow our precedents which require examination of the "totality of the circumstances" to determine whether probable cause exists to conduct a warrantless search. *See, e.g.*, *Missouri v. McNeely*, 569 U.S. 141, 143 (2013); *State v. McKinney*, 361 N.C. 53, 62 (2006); *State v. Woolard*, 385 N.C. 560, 569 (2023). In that evaluation, the odor of cannabis is one factor that may be considered.

In this case, following a traffic stop, law enforcement officers conducted a warrantless search of Mr. Tyron Lamont Dobson's vehicle and person and discovered

marijuana and a handgun. Mr. Dobson appealed his judgment after the trial court sentenced him to twenty-four months of supervised probation. Below, the trial court determined that the totality of the circumstances justified the police search of Mr. Dobson's vehicle and person. The Court of Appeals affirmed that order, holding that the officers' detection of a cover scent provided a basis to support probable cause for a search in addition to their detection of the odor of marijuana.

Mr. Dobson argues that the Court of Appeals erred in affirming the judgment, asserting that it failed to conduct the requisite "totality of the circumstances" analysis with respect to the search at issue and instead applied an unconstitutional "double odor" rule in determining the existence of probable cause. The State argues that the "odor alone" doctrine is good law; and in the alternative, that the Court of Appeals did not create a "double odor" rule and other facts gave rise to probable cause.

We hold here that the smell of marijuana and the smell of a cover scent were not the only factors on which the officers relied in making their probable cause determination. Considering the totality of the circumstances, we hold that the officers' search was objectively reasonable. We therefore affirm the judgment of the Court of Appeals.

## I.  Background

### A.  Facts

Around 10 p.m. on 23 January 2021, in downtown Greensboro, the Center City Resource Team observed a handgun in the driver door pocket of a parked black Dodge

Charger. The Resource Team relayed this observation to the Greensboro Police Department's Street Crimes Unit. Soon after, the Street Crimes Unit arrived at the parking lot, where officers observed four individuals enter the Charger and leave the parking lot "quickly." Because officers were aware of past incidents involving the discharge of a firearm in the downtown area, the officers decided to continue surveilling the car.

The officers—five in total—began to follow the Charger in unmarked vehicles. Detective Allis and Sergeant Strum began to pace the vehicle at the intersection of Freeman Mill Road and Randleman Road. Detective Allis paced the Charger at fifty-five miles per hour in the forty-five mile-per-hour zone. He relayed this information to the rest of his team, and Officer Guy and Officer Foster subsequently initiated a traffic stop. Detective Allis, Sergeant Strum, and Detective Bailey also participated in the stop.

Officer Foster approached the driver on the driver's side, while Detective Guy approached the passenger on the passenger's side. The officers noted a woman driving the car, a woman in the passenger seat, and two men in the rear seats. The driver, Janelle Albright, identified herself as a probation and parole officer and alerted the officers to her handgun on the dashboard. She provided her license and credentials. Officer Foster reviewed Ms. Albright's license and credentials, and when he went to return them to her, he smelled an "odor of burnt marijuana" coming from the vehicle. Officer Foster relayed this observation to Ms. Albright, who told the officer that the

smell "may have come from the club they visited."

The officers then began to collect the identifications of all of the Charger's passengers. As Detective Allis was speaking to one of the backseat passengers, he smelled a "strong odor of perfume/cologne" that was "freshly sprayed." He recognized the heavy use of fragrances as a "cover scent," which from his ten years of experience in law enforcement, often is "used in order to attempt to mask the smell of illegal narcotics or alcohol." Sergeant Strum similarly smelled a "very sweet almost fruity smell that was overpowering" when he walked past the vehicle, also identifying it as a cover scent.

While the car was stopped, Detectives Allis and Bailey proceeded to conduct a criminal background check of the occupants. They discovered that one of the backseat passengers, Demario Hargrave, had been convicted of possession with intent to sell or distribute cocaine and possession with intent to sell or distribute marijuana. They also discovered that the other backseat passenger, Mr. Dobson, had been previously convicted of a felony and had recently been charged with assault with a deadly weapon with intent to kill inflicting serious injury and possession of a firearm by a felon.

At this point, "[g]iven the totality of the circumstance[s]," the officers concluded they had probable cause to search the vehicle and its occupants of likely criminal activity. The officers notified the occupants and asked them to exit the vehicle. Mr. Hargrave complied, and Detective Bailey took custody of him. Mr. Dobson similarly

complied but did so while holding several food trays close to his belt line in a way Detective Allis found "unnatural." Detective Allis observed a "retail package of marijuana" on the seat after Mr. Dobson got up. While Mr. Dobson was initially reluctant to put the trays down, he eventually complied and was subsequently detained.

Detective Allis proceeded to search Mr. Dobson's person. While doing so, a handgun became dislodged from Mr. Dobson's person and fell to the ground, where Detective Bailey safely retrieved it.

Finally, Sergeant Strum and Detective Allis conducted a search of the vehicle, which revealed a "retail package of marijuana" on the front seat, a cannabis cigarette on the driver's side floor, a cannabis cigarette in the backseat, a cannabis-filled cigar behind an armrest, and a nugget of cannabis in the backseat. Mr. Dobson was placed under arrest for carrying a concealed weapon, possession of a firearm by convicted felon, and simple possession of marijuana.

## B. Procedural Posture

On 1 March 2021, a grand jury in Guilford County indicted Mr. Dobson for (1) possession of a firearm by a felon, (2) misdemeanor carrying a concealed firearm, and (3) misdemeanor possession of marijuana (up to one-half ounce). On 21 February 2022, Mr. Dobson filed a motion to suppress the evidence obtained from the vehicle stop. He filed an amended motion to suppress on 8 November 2022, further arguing that the searches of the vehicle and his person were unsupported by probable cause.

After a hearing, the trial court denied Mr. Dobson's motion to suppress. The trial court concluded that officers had reasonable suspicion to stop the Charger initially because the car was speeding. It also determined that "the odor of marijuana, the driver's statement that she and the occupants of the Charger were in a club where marijuana was smoked, and the cologne smell as a cover agent for the marijuana" constituted probable cause to search the vehicle. The trial court clarified with respect to his probable cause determination that, in this case, "[w]e have the smell of marijuana . . . plus something else." Because the search of the Charger was reasonable, there was a firearm found in the car, and Mr. Dobson had a felony conviction and a pending violent felony charge, the trial court also concluded that the removal of Mr. Dobson from the vehicle and frisk of his person was reasonable.

After the trial court denied his motion to suppress, Mr. Dobson consulted with his attorney and chose to plead guilty in exchange for the State dismissing the misdemeanor possession charge. He also reserved his right to appeal the denial of the motion to suppress as a condition of his plea. Mr. Dobson was sentenced to fourteen to twenty-six months in custody, and the sentence was suspended for twenty-four months of supervised probation. He gave notice of appeal as to the order on the suppression motion in open court.

On appeal, the Court of Appeals affirmed the trial court's judgment, holding the trial court did not err in its denial of Mr. Dobson's motion to suppress. *State v. Dobson*, 293 N.C. App. 450, 456 (2024). The Court of Appeals recognized that, "[i]f the

scent of marijuana no longer conclusively indicates the presence of an illegal drug[,] . . . then the scent of marijuana may be insufficient to show probable cause to perform a search." *Id*. at 453 (quoting *State v. Parker*, 277 N.C. App. 531, 541 (2021)). However, the legalization of hemp in North Carolina did not eliminate the significance of the "odor of marijuana" for purposes of a motion to suppress. *Id*. at 454. Further, in this case, the odor of marijuana was not the sole basis for the probable cause search; indeed, officers detected the scent of marijuana "*plus*" a cover scent. *Id*. at 455. In the Court of Appeals' view, the odor of marijuana and the detection—by multiple officers—of the cover scent provided a sufficient basis for a probable cause search. *Id*. at 456.

This Court allowed discretionary review as to the issue of whether the Court of Appeals failed to conduct the requisite "totality of the circumstances" analysis and instead evaluated the existence of probable cause by applying an unconstitutional new "double odor" rule.

## II.    Analysis

### A. Standard of Review

An appellate court's review of a trial court's denial of a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134 (1982). "[F]indings of fact . . .

not challenged on appeal . . . are deemed to be supported by competent evidence and are binding on appeal." *State v. Biber*, 365 N.C. 162, 168 (2011). Conclusions of law are reviewed de novo. *Id.* This Court reviews a decision of the Court of Appeals for errors of law. N.C. R. App. P. 16(a).

A denial of a motion to suppress is reviewed under the standards required by the Fourth Amendment, which secures the people against unreasonable searches and seizures. *State v. Colson*, 274 N.C. 295, 306 (1968).

In general, warrantless searches and seizures are presumed unreasonable under the Fourth Amendment. *Id.* The fruits of such an unreasonable search or seizure may be excluded as evidence in criminal proceedings. *See, e.g.*, *State v. Cooke*, 306 N.C. 132, 135 (1982). Under the automobile exception, however, the government may search a vehicle "on a public roadway or in a public vehicular area . . . if [the search] is based on probable cause, even though a warrant has not been obtained." *State v. Isleib*, 319 N.C. 634, 638 (1987); *accord Pennsylvania v. Labron*, 518 U.S. 938 (1996). Evidence obtained in such a search may be admitted in a criminal proceeding if facts known to the officers conducting the search gave the officer probable cause of a potential crime. *Isleib*, 319 N.C. at 638.

Probable cause exists when "facts and circumstances within . . . the officers' knowledge . . . are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (cleaned up) (quoting *Carroll v. United States*, 267 U.S.

132, 162 (1925)). Probable cause calls for an officer to determine whether there is a "fair probability"—of contraband or criminal activity—upon which "reasonable and prudent people, not legal technicians, act." *Florida v. Harris*, 568 U.S. 237, 244 (2013) (cleaned up) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). This inquiry requires common-sense considerations of "the totality of the circumstances." *State v. Arrington*, 311 N.C. 633, 638 (1984). This analysis is "fluid[,] . . . turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232.

The totality of the circumstances approach is not a demand of a rigid specific test, but is a "practical, nontechnical conception." *Brinegar*, 338 U.S. at 176. Meaning, as a court, we must ascertain the "whole picture" rather than review each fact in isolation. *United States v. Cortez*, 449 U.S. 411, 417 (1981). In addition, the totality of the circumstances allows trained officers to use their professional experiences and specialized training to make inferences from their observations that "might well elude an untrained person." *Id.* at 418. By definition, then, no one consideration is dispositive of the totality of the circumstances inquiry. *E.g., State v. Johnson*, 378 N.C. 236, 245–46 (2021) (noting that while a prior criminal record, presence in a high-crime area, and nervousness may not, standing alone, provide an officer with reasonable suspicion, each factor may weigh in the "totality of the circumstances" analysis). Relevant factors can include, for example, the statements of informants, *State v. Jackson*, 309 N.C. 26, 37–38 (1983); the behavior of the suspect, *Sennett v.*

*United States*, 667 F.3d 531, 536–37 (4th Cir. 2012); statements by the suspect or associates, *State v. Nicholson*, 371 N.C. 284, 290–91 (2018); and odors suggesting illegal use or possession of substances, *Woolard*, 385 N.C. at 571–72. Even innocuous conduct may provide suggestions to bolster the probable cause inquiry when the overall facts known to the officer appear to be suspicious and the innocent explanation is not readily discernable. *See District of Columbia v. Wesby*, 583 U.S. 48, 60–62 (2018). However, when information known to officers at the time of the stop affirmatively negates an inference of reasonable suspicion, that inference is dispelled and may no longer be weighed as a factor in the totality of the circumstances analysis supporting probable cause. *Kansas v. Glover*, 589 U.S. 376, 386 n.2 (2020).

## B. Application to Mr. Dobson

Mr. Dobson argues that the Court of Appeals failed to conduct the requisite totality of the circumstances analysis and instead evaluated the existence of probable cause by applying an unconstitutional new "double odor" rule. We need not resolve whether the smell of a single odor or a double odor is sufficient to establish probable cause. Rightfully, based on the totality of the circumstances, we must consider whether there was probable cause to justify the search of the Dodge Charger.

Applying the totality of the circumstances test, viewing the entire record, probable cause did exist for officers to search the Dodge Charger. The officers' observation of the Charger's excessive speed was the first relevant factor in the totality of the circumstances. Detective Allis paced the vehicle at fifty-five miles per

hour in a forty-five mile-per-hour zone. That traffic violation provided the officers with lawful justification to initiate the stop, and the circumstances that developed during the stop must be assessed against the backdrop of that initial, objective basis for police contact. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (a traffic stop is lawful where officers have probable cause to believe a traffic violation has occurred).

As the stop progressed, Officer Foster detected an odor of burnt marijuana emanating from the vehicle when he returned Ms. Albright's license and credentials to her. The smell of marijuana is a well-recognized factor supporting probable cause to search a vehicle. *See Woolard*, 385 N.C. at 571–72. Although North Carolina's legalization of industrial hemp has complicated marijuana-odor analysis in some respects, it has not eliminated odor as a factor in the totality of the circumstances inquiry. *See Dobson*, 293 N.C. App. at 454. Ms. Albright's explanation that the smell "may have come from the club they visited" offered only a speculative innocent account that did not affirmatively dispel suspicion. Accordingly, the detection of the odor of burnt marijuana remained a meaningful consideration weighing in favor of probable cause.

The detection of a cover scent added independent weight to the probable cause calculus. Drawing on a combined ten years of law enforcement experience, Detective Allis identified a "strong odor of perfume/cologne" that had been "freshly sprayed" as a classic cover scent — a tactic commonly used to mask the smell of illegal narcotics or alcohol. Sergeant Strum likewise detected a "very sweet almost fruity smell that

was overpowering," independently recognizing it as a cover scent. The near-simultaneous, independent identification of that odor by two experienced officers lent substantial reliability to that observation. *See Cortez*, 449 U.S. at 418 (trained officers may draw inferences from observations that might elude an untrained person).

The criminal history of the vehicle's occupants further bolstered probable cause. While conducting the stop, Detectives Allis and Bailey ran a background check and discovered that Demario Hargrave — one of the two backseat passengers — had prior convictions for possession with intent to sell or distribute cocaine and possession with intent to sell or distribute marijuana. Although a prior criminal record alone does not establish probable cause, a passenger's history of drug-distribution offenses, when considered alongside evidence of marijuana and a freshly applied cover scent, meaningfully contributes to the overall picture of likely criminal activity. *See Johnson*, 378 N.C. at 245–46. Mr. Hargrave's drug-trafficking background was thus a relevant consideration in the totality of the circumstances analysis.

The background check similarly revealed that Mr. Dobson himself had a prior felony conviction and was at that time facing a pending charge of assault with a deadly weapon with intent to kill inflicting serious injury, as well as a pending charge of possession of a firearm by a felon. These pending charges are appropriately considered as part of the totality of the circumstances because they are facts known to the officers at the time of the stop, even if they do not establish guilt. *See Brinegar*, 338 U.S. at 175–76 (probable cause turns on facts and circumstances within the

officers' knowledge). That Mr. Dobson was actively facing a pending violent felony involving a firearm, combined with the drug-related indicators already present, contributed to a reasonable officer's belief that criminal activity was likely present.

Lastly, the presence of Ms. Albright's handgun on the dashboard is not a factor in our totality of the circumstances analysis. Under *Glover*, where information known to officers at the time of the stop affirmatively negates an inference of reasonable suspicion, that inference is dispelled and may not be counted in favor of probable cause. 589 U.S. at 386 n.2. Here, Ms. Albright identified herself as a probation and parole officer at the outset of the stop and provided her law enforcement credentials. Her firearm was lawfully possessed in the course of her duties as a licensed officer of the state. That disclosure affirmatively eliminated any inference of unlawful possession that might otherwise have been drawn from the presence of the gun. Accordingly, the firearm belonging to Ms. Albright does not enhance the probable cause calculus, as it was a neutral fact explained by her lawful status.

Even setting aside Ms. Albright's firearm entirely, the remaining circumstances — the traffic violation, the odor of burnt marijuana, the freshly applied cover scent independently detected by two experienced officers, the drug-distribution criminal history of Mr. Hargrave, and Mr. Dobson's felony record and pending violent felony and firearm charges — collectively provided the officers with a fair probability that contraband or criminal activity would be found in the Charger. *See Harris*, 568 U.S. at 244. The officers' search of the vehicle and the subsequent search of Mr.

Dobson's person were therefore objectively reasonable under the Fourth Amendment.

As a result, after reviewing the record in its entirety and the totality of the circumstances, the judgment of the Court of Appeals is affirmed.

AFFIRMED.