STATE OF NORTH CAROLINA v. CHRISTOPHER A. RUSSELL

No. 8623SC288

(Filed 17 February 1987)

1. **Searches and Seizures § 11— warrantless search of airplane—probable cause**

   An airplane falls within the "automobile exception" to the warrant requirement of the Fourth Amendment so that a law enforcement officer is required only to have probable cause to believe that the plane or its contents contain contraband.

2. **Searches and Seizures § 11— warrantless search of airplane—sufficiency of evidence of probable cause**

   The initial stop of an airplane and detention of its occupants were justified by the reasonable suspicion of law enforcement officers that the plane was transporting contraband where the officers had knowledge that the Ashe County airport had been used before to fly in contraband; the plane was approaching the airport on a foggy night, well after the normal operating hours of the airport, had circled the airport several times making very low passes, and was a plane unusually large to be landing at that airport; an individual with no identification who was driving an empty pickup truck with no registration, only temporary Utah tags, was waiting for the plane; and the driver of

this truck stated, without prompting or questioning, that the plane would not land because the pilot had seen the lights of a car which had pulled into the airport. Furthermore, this reasonable suspicion was elevated to probable cause once the plane was on the ground because of statements and behavior of the plane's occupant and pilot and the person waiting on the ground.

**3. Searches and Seizures § 11— warrantless search of plane—search of baggage proper**

Where law enforcement officers engaged in a legitimate, warrantless search of an airplane, the permissible scope of the search extended to the suitcases and overnight bag in the plane in which cocaine was found.

**4. Criminal Law § 75— warrantless search of airplane—statements by suspects prior to search—admissibility**

There was no merit to defendant's contention that the trial court erred in failing to suppress certain statements made by each of three suspects during their detention leading up to the search of an airplane, since officers had reasonable suspicion to justify the initial detention; certain events elevated the suspicion to probable cause; and each suspect was given the Miranda warnings upon his initial encounter with the officers.

**5. Criminal Law § 98.2— sequestration of witnesses—denial proper**

The trial court did not abuse its discretion and defendant failed to demonstrate any prejudice in denial by the court of defendant's motion to sequester the State's witnesses.

**6. Criminal Law § 64— defendant under influence of narcotics at arrest—officer's opinion properly admitted**

In a prosecution of defendant for conspiring to traffic in cocaine and trafficking in cocaine by possessing and transporting in excess of 400 grams, the trial court did not err in allowing a law enforcement officer to testify that in his opinion defendant was under the influence of narcotics on the night of his arrest.

**7. Narcotics § 1.3— trafficking in cocaine by possessing and transporting—separate offenses—separate punishments proper**

Defendant's convictions and sentencing for the two separate offenses of trafficking in cocaine by possession and trafficking in cocaine by transporting did not violate the constitutional guarantee against multiple punishments for the same offense.

APPEAL by defendant from *Morgan, Judge.* Judgment entered 30 October 1985 in Superior Court, WILKES County. Heard in the Court of Appeals 27 August 1986.

The Ashe County airport is located several miles from Jefferson, the county seat, which has a population of approximately one thousand. The airport is a modern facility with a 4,200-foot runway, long enough to handle large twin-engine private aircraft

such as turboprops. The runway is equipped with a sophisticated system of landing lights which can be activated by a radio signal from a plane wishing to land. The facility is run by a fixed-base operator who lives in a trailer adjacent to the airport.

On 28-29 August 1985, the late evening and early morning hours were foggy and the airport was quiet. Then, around midnight, a state trooper who lived near the airport was awakened by the noise of a large, twin-engine plane flying low overhead. The trooper was aware that state and local authorities suspected that illegal drugs had been flown into the Ashe County airport in the past. He telephoned the sheriff's office to inform Ashe County Sheriff Goss about the plane. The sheriff radioed deputies who were near the airport to proceed to the airport, with lights off so as not to alert the plane.

One deputy who had been nearest the airport arrived first and spotted a pickup truck with a camper top and temporary Utah tags parked at the airport gate. The driver of the truck identified himself as Ken Kubinski and stated that he was there to pick up two friends but that the plane probably could not land because of the fog. The driver had no identification and no registration for the truck. The deputy radioed this information to the sheriff, who was on his way to the airport with two more deputies. Sheriff Goss ordered the deputy at the airport to detain Kubinski.

The plane circled the airport several times. Sheriff Goss arrived soon with the other deputies. A car approached with its lights on; the driver was a curious neighbor who had been awakened by the circling plane. Sheriff Goss asked him to leave the area. Kubinski then stated that the plane would not land because the pilot had seen the car headlights.

Evidently, though, the plane had already landed because at that moment the plane was seen taxiing toward the gate. The officers hid as the plane approached. When the plane stopped taxiing, defendant Russell got out of the plane and began walking toward the gate.

As defendant neared the gate, he was confronted by a uniformed deputy. Defendant turned and began walking rapidly back toward the plane; he did not stop when commanded to by the dep-

uty. Defendant was heard to yell, "Get the hell out of here." Defendant then returned to where the deputy was standing, and the deputy asked defendant to go on board the plane and ask the pilot to shut down the engines. When defendant got to the plane, the deputy again heard him yell, "Get the hell out of here," to the pilot. The deputy heard the engines get louder, and he thought the pilot may have been trying to take off. The deputy entered the plane and ordered the pilot to cut off the engines. The pilot complied. The pilot and defendant were escorted from the plane.

Sheriff Goss advised the pilot of his *Miranda* rights and asked for permission to search the plane. The pilot refused and the sheriff dispatched a deputy back to the magistrate's office in Jefferson to procure a search warrant. Defendant and the pilot, identified as Rick Loyd, were detained, but not placed under arrest, while the deputy was gone. During the wait, the pilot stated he had changed his mind and would consent to a search of the plane. Loyd signed a form giving consent to search the plane and its contents. Defendant was asked if he objected and, according to Sheriff Goss, stated that he didn't care because he had no belongings on the plane anyway.

The search of the plane uncovered two large suitcases. The suitcases were latched but not locked. The deputies unlatched the suitcases and opened them. Inside were large quantities of a white powdered substance, later identified as cocaine. Other packages of cocaine were also found. The total amount of cocaine found on the plane was well in excess of 1,900 grams of ninety percent pure cocaine, having a street value of over fifteen million dollars.

Defendant Russell was indicted for conspiracy to traffic in cocaine, trafficking in cocaine by transporting in excess of 400 grams, and trafficking in cocaine by possessing in excess of 400 grams. The pilot Loyd and the driver of the waiting pickup truck, Kubinski, were both also indicted on all three charges.

Because of prejudicial pre-trial publicity, Judge Morgan granted defendants' motion for change of venue. Defendants were tried in Wilkes County. Defendants' motion to suppress the cocaine as the fruit of an unconstitutional search and seizure was denied. After a lengthy trial, defendants Kubinski and Loyd were acquitted of all charges. Defendant Russell was convicted of both

trafficking charges, but acquitted of the conspiracy charge. He was sentenced to forty years for each offense, to be served consecutively, and was also fined a total of four million dollars. He appeals.

*Attorney General Lacy H. Thornburg by Assistant Attorneys General John H. Watters and Steven F. Bryant for the State.*

*Richard D. Esper, of the State Bar of Texas, admitted pro hac vice, for defendant-appellant.*

PARKER, Judge.

[1] Defendant's primary contention on this appeal is that the trial court erred in denying his motion to suppress the cocaine seized from the airplane as the fruit of an illegal search and seizure. The trial court below conducted a hearing on the motion pursuant to G.S. 15A-977(d). At the conclusion of the hearing, the court made extensive findings of fact and conclusions of law. Based on these findings and conclusions, the court ruled that the search of the plane and the luggage on board was valid on two alternative theories. First, the pilot of the plane had freely given his knowing consent to search the plane, and the scope of such consent could, and did, include the luggage on board. Second, the court concluded that an airplane falls within the "automobile exception" to the warrant requirement of the Fourth Amendment, requiring only that the Sheriff have probable cause to believe the plane or its contents contained contraband. The court specifically found that such probable cause existed.

In our view the search of the plane and its contents was justified because probable cause existed to believe that the plane carried contraband. An airplane is a highly mobile vehicle, subject to extensive regulation, in which a defendant has a diminished expectation of privacy and, therefore, comes within the "automobile exception" to the warrant requirement of the Fourth Amendment. *See, e.g., United States v. Rollins*, 699 F. 2d 530 (11th Cir. 1983). In such a situation, "a search is not unreasonable if based on facts which would justify the issuance of a warrant, even though a warrant has not been obtained." *United States v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 2164-65, 72 L.Ed. 2d 572, 584 (1982).

**[2]** In this case, the initial "stop" of the airplane and detention of its occupants were justified, as they must be, by the "reasonable suspicion" of the law enforcement officers that the plane was transporting contraband. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). The officers had knowledge that the Ashe County airport had been used before to fly in contraband. The plane was approaching the airport on a foggy night, well after the normal operating hours of the airport, had circled the airport several times, making very low passes, and was a plane unusually large to be landing at that airport. An individual with no identification who was driving an empty pickup truck with no registration, only temporary Utah license tags, was waiting for the plane. The driver of this truck stated, without prompting or questioning, that the plane would not land because the pilot had seen the lights of a car which had pulled into the airport. These facts were sufficient to give the officers a reasonable suspicion that the plane contained contraband. Therefore, the "stop" of the plane and the initial detention of the three suspects, defendant, the pilot and the waiting driver, were justified.

Once the plane was on the ground, several things occurred which elevated this reasonable suspicion to probable cause. Upon seeing the plane taxiing toward the officers, the driver who had been waiting for the plane said in response to a question, "My name is Peter Rabbit and I want a lawyer." The defendant here exited the plane and began walking toward the gate. When he spotted the waiting law enforcement officers, he wheeled and began returning to the plane. Despite being requested to stop by the nearest officer, defendant continued toward the plane. An officer followed him and as defendant approached the plane, the officer heard him shout, "Get the hell out of here." Defendant then returned to where the officer was standing and produced a California driver's license in response to a request for identification. The engines of the plane were still running and the officer requested that defendant return to the plane and ask the pilot to cut off the engines. Defendant returned to the plane, followed by the officer. As defendant reentered the plane, he was again heard to exclaim, "Get the hell out of here." The engines began to get louder, but at that point the officer entered the plane and asked the pilot to cut off the engines. The officer noticed that defendant appeared to be under the influence of a narcotic, which he be-

lieved to be either cocaine or methamphetamine. These additional facts, combined with those facts already known to the officers, were sufficient to give the officers probable cause to believe the plane contained contraband.

[3] Having concluded that the officers had probable cause to search the plane, the question then becomes the permissible scope of the search. Under the decision in *Ross, supra,* when the police engage in a legitimate, warrantless search of an automobile, the scope of that search extends to any containers found inside that may conceal the object of the search. *Id.* at 824, 102 S.Ct. at 2172, 72 L.Ed. 2d at 593. Therefore, the permissible scope of the search in this case extended to the suitcases and overnight bag in which the cocaine was found.

In light of our holding on the issue of probable cause to search, we need not address the contentions of defendant related to the pilot's consent to search the plane. That consent was unnecessary to authorize the search; therefore, its validity or invalidity has no relevance to our inquiry.

[4] Defendant also contends that the trial court erred in failing to suppress certain statements made by each of the suspects during their detention leading up to the search. Defendant argues that the initial detention was not supported by the required reasonable suspicion and that, even if it were, their detention exceeded the limited intrusion allowed by *Terry, supra,* and its progeny. However, as pointed out above, we believe there was reasonable suspicion to justify the initial detention and, as the facts developed to the officers, the reasonable suspicion became probable cause. So, even if there were a *de facto* arrest, as defendant contends, it was supported by probable cause and was, therefore, legitimate. *See Peters v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 2d 917 (1968). Further, each of the suspects had been given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), upon their initial encounter with the officers. The police actions in this case were just the sort of "graduated responses" to changing circumstances approved in *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed. 2d 605 (1985).

[5] Defendant next assigns as error the denial by the trial court of his motion to sequester the State's witnesses, made at both the

suppression hearing and the trial. The North Carolina rule is that the motion to sequester witnesses is addressed to the sound discretion of the trial judge. G.S. 8C-1, Rule 615; *State v. Young*, 312 N.C. 669, 325 S.E. 2d 181 (1985). The trial court's ruling on the motion to sequester is reviewable on appeal only upon a showing of abuse of discretion. *Young, supra.* We note further that defendant presented no argument in support of his motion to the trial court here.

Defendant is also unable to demonstrate any prejudice in this case. At the suppression hearing, Sheriff Goss was the first witness to testify and he related all the key facts necessary to support the trial court's ruling on the motion. Thus, there could be no prejudice resulting from the failure to sequester the witnesses. Although defendant does allege that Sheriff Goss changed his testimony from that given at the suppression hearing, the alleged change related only to a collateral matter — corroboration of another officer's testimony — and defendant was free to impeach the Sheriff's trial testimony with his earlier testimony given at the suppression hearing. This assignment of error is overruled.

**[6]** Defendant's next assignment of error is that the trial court erred in allowing Officer Baker of the Ashe County Sheriff's Department to testify at the suppression hearing that in his opinion, defendant was under the influence of narcotics the night of his arrest. The defendant objected to this testimony on two grounds: first, that it was improper rebuttal evidence and, second, that the officer was not qualified to give such an opinion.

As to the first objection, rebuttal testimony is permissible to "impeach defendant's witnesses or to explain, modify, or contradict defendant's evidence." *State v. Sidden*, 315 N.C. 539, 554, 340 S.E. 2d 340, 349 (1986). The testimony was proper rebuttal evidence, as it was relevant to impeach the reliability of defendant's testimony concerning the events of the night of his arrest. As to the second objection, the rule is well established in this jurisdiction "that a lay witness may state his opinion as to whether the person is under the influence of drugs when he has observed the person and such testimony is relevant . . . ." *State v. Lindley*, 286 N.C. 255, 258, 210 S.E. 2d 207, 210 (1974). The assignment of error is overruled.

[7]  Defendant's final assignment of error is that his convictions and sentencing for the two separate offenses of "trafficking in cocaine by possession" and "trafficking in cocaine by transporting" violate the constitutional guarantee against multiple punishments for the same offense. This issue has been decided adversely to defendant in *State v. Perry*, 316 N.C. 87, 340 S.E. 2d 450 (1986) (trafficking in heroin by possession, trafficking in heroin by manufacturing and trafficking in heroin by transporting are three distinct offenses, and a conviction for each does not violate the prohibition against double jeopardy), and *Sanderson v. Rice*, 777 F. 2d 902 (4th Cir. 1985), *cert. denied*, --- U.S. ---, 106 S.Ct. 1226, 89 L.Ed. 2d 336 (1986) (convictions for trafficking in marijuana by possession and trafficking in marijuana by manufacturing do not constitute double jeopardy). The assignment of error is overruled.

Having carefully examined the record on appeal and thoroughly considered the contentions of defendant, we conclude defendant received a fair trial free from prejudicial error.

No error.

Judges ARNOLD and EAGLES concur.