STATE OF NORTH CAROLINA v. ENOL MILIEN, DEFENDANT

No. COA00-511

(Filed 19 June 2001)

**Search and Seizure— investigative stop—object thrown from car—defendant handcuffed during search for object—probable cause**

The trial court did not err by denying defendant's motion to suppress evidence resulting from an investigative stop where defendant was seen burying a plastic bag containing a rocky, off-white substance in the woods on 16 December; defendant dug up

STATE v. MILIEN

[144 N.C. App. 335 (2001)]

the plastic bag on 18 December immediately after being told that a drug dog would be brought to the woods; he left the area in his car and, upon realizing that he was being followed, sped up and threw a white plastic bag from the car; defendant stopped only when officers turned on their siren, not when they turned on their blue light; officers did not formally arrest defendant but handcuffed him while searching for the bag; and defendant was arrested after the bag was found about 15 minutes later. Whether there was a de facto arrest or merely an investigatory detention, the facts and circumstances within the drug agents' knowledge and of which they had reasonably trustworthy information were sufficient to warrant the reasonable belief that defendant had committed or was committing an offense.

Appeal by defendant from judgments entered 13 July 1999 by Judge Henry W. Hight, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 18 April 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General, Robin P. Pendergraft, for the State.*

*Kelly K. Daughtry, for defendant-appellant.*

HUDSON, Judge.

Defendant was charged and convicted on one count of trafficking in cocaine by possession and one count of trafficking in cocaine by transportation and was sentenced to two consecutive terms of imprisonment. Defendant appeals, assigning error to the trial court's denial of his motion at trial to suppress certain evidence and testimony. We find no error.

The evidence presented at trial tended to show the following. On the morning of 16 December 1998, Chad Thompson, a narcotics investigator with the Johnston County Interagency Drug Task Force (the task force), was conducting surveillance in the area surrounding the Herring Mobile Home Park (the mobile home park). Thompson was positioned in the woods about two steps from a dirt path located in the mobile home park and he was dressed in camouflage. At approximately 8:45 a.m., a two-tone beige 1980's Chevrolet Impala automobile arrived and parked in Lot W-3 in the mobile home park within Thompson's view. Defendant exited the car and walked on the dirt path until he was directly in front of Thompson. Defendant took a couple of steps into the woods directly across from Thompson.

Defendant was wearing a brown jacket and a baseball cap. From a distance of six steps, Thompson witnessed defendant pull from the breast pocket of his jacket a plastic bag containing approximately two or three ounces of an off-white, rocky substance. Defendant dug a small hole and buried the bag. He then stood up and walked back to the trailer on Lot W-3. Thompson subsequently communicated what he had witnessed to Agent Angela Bryan.

Two days later, on the morning of 18 December 1998, Thompson met with Agent Bryan, Agent Fish, Officer Jones, Lieutenant Somogyi and Marty Benson, the captain of the task force. They went to the mobile home park where Thompson and Fish, both dressed in camouflage, positioned themselves in the same spot in the woods where Thompson had been two days earlier. Later that morning, Benson and the three other agents went into the mobile home park to a location approximately 150 to 200 yards from where Thompson and Fish were positioned. They spoke with several men, including defendant, for ten or fifteen minutes. The men consented to a pat-down search, but no controlled substances were found. Benson then told the men that he was going to get a drug dog to search the wooded area. Benson and the other agents then returned to their vehicles.

Thereafter, Thompson saw the same automobile pull into Lot W-3, and saw defendant come down the path wearing the same jacket and baseball cap. Defendant went to the precise spot where he had buried the bag two days earlier, dug up the bag, and placed it in his jacket pocket. He then walked back out to the car and drove away. Thompson and Fish contacted the others to tell them defendant was in his car leaving the mobile home park. The four other agents— Benson in an undercover van with Somogyi, and Bryan in a second vehicle with Jones—positioned their two vehicles near the entrance to the mobile home park. Benson spotted the Chevrolet occupied by a single individual and followed in the van for about a mile until the Chevrolet turned into a private drive. The Chevrolet and the undercover van were driving at approximately five to ten miles per hour and the van was approximately 25 to 30 feet behind the Chevrolet at this point. Immediately after Benson made the turn into the private drive behind the Chevrolet, the Chevrolet sped up. Then the driver threw a white plastic bag about the size of a baseball out of the passenger window into the wooded area to the side of the road. Benson then activated his blue light, but the Chevrolet did not stop. Benson activated his siren and the Chevrolet stopped. Benson instructed Somogyi to go search for the plastic bag that had been thrown into

the woods. Bryan arrived at the scene alone, having dropped off Jones at the beginning of the private drive. Defendant got out of the car, the agents introduced themselves, patted down defendant, and handcuffed him, but defendant was not formally placed under arrest at this time. Benson then left defendant in Bryan's custody and went to search for the plastic bag. The plastic bag was found after approximately 15 minutes. Defendant was then placed under arrest.

During the trial, defendant moved to suppress the admission of evidence resulting from the investigative stop and detention of defendant. The trial court denied defendant's motion. The trial court subsequently entered an order embodying its findings and conclusions on defendant's motion to suppress. The factual findings in the order pertaining to the incident on 18 December 1998 are an accurate summary of the evidence presented at trial, and defendant does not assign error to these findings. The order includes the following conclusions as a matter of law:

33. That the collective knowledge of the Officers (the acts witnessed by Agents Thompson and Fish) provided to Captain Benson and known to him at the time he began following the Defendant, the actions of the Defendant in trying to elude the Agents, speeding up when the blue light was turned on, discarding an object from his vehicle, all provide sufficient exigent circumstances from which the Officer could form the reasonable suspicion that criminal activity was being engaged in by the Defendant.

34. That such reasonable suspicion was sufficient to allow Captain Benson and Officer Somogyi to make an investigative stop of the Defendant's vehicle and to detain the Defendant for a reasonable period of time.

. . .

38. That none of the constitutional rights, either State or Federal, of the Defendant were violated by the stop of his motor vehicle or handcuffs being placed on the Defendant.

39. That the detention of the Defendant was for a legitimate purpose and was limited in scope and duration.

. . .

41. That the Defendant's objection should be overruled and denied.

In reviewing the denial of a motion to suppress, we must determine whether the findings of fact are supported by competent evidence in the record, and whether the findings, in turn, support the ultimate conclusion of law. *See State v. Parker*, 137 N.C. App. 590, 594, 530 S.E.2d 297, 300 (2000). Because defendant does not challenge the factual findings in the order, we need only determine whether the trial court's ultimate conclusion, denying defendant's motion to suppress, was supported by the findings of fact. We find no error in the order denying the motion to suppress and therefore affirm the judgments.

"The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This mandate is applicable to the states through the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081 (1961). Evidence obtained by an unlawful search or seizure is inadmissible at trial. *See id.* Although there is no "litmus-paper test" for determining what constitutes a "seizure" for Fourth Amendment purposes, *see Florida v. Royer*, 460 U.S. 491, 506, 75 L. Ed. 2d 229, 242 (1983), it is clear that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person," *Terry v. Ohio*, 392 U.S. 1, 16, 20 L. Ed. 2d 889, 903 (1968). Thus, there is no question that defendant here was "seized" for Fourth Amendment purposes.

Acts which constitute "seizures" of a person for Fourth Amendment purposes may very generally be divided into two categories: (1) arrests and (2) investigatory stops. *See Graham v. Connor*, 490 U.S. 386, 394, 104 L. Ed. 2d 443, 454 (1989) (holding that excessive force claims arising in context of arrest or investigatory stop invoke protections of Fourth Amendment against unreasonable seizures); *Reid v. Georgia*, 448 U.S. 438, 440, 65 L. Ed. 2d 890, 893 (1980) (explaining that Fourth and Fourteenth Amendments' prohibition of unreasonable searches and seizures governs all seizures, including traditional arrests as well as seizures involving only a brief detention short of traditional arrest); Robert L. Farb, *Arrest, Search, and Investigation in North Carolina* 22 (2d ed. 1992). It is well-established that a formal arrest always requires a showing of "probable cause." *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 111, 43 L. Ed. 2d 54, 64 (1975). An investigatory stop, on the other hand, at least at its inception, does not require probable cause; rather, it is only necessary that, given the totality of the circumstances, "the detaining officers [] have a particularized and objective basis for suspecting the

particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18, 66 L. Ed. 2d 621, 629 (1981). This standard has also been described as a "reasonable suspicion of criminal activity." *Royer*, 460 U.S. at 498, 75 L. Ed. 2d at 237.

In situations involving an investigatory stop, once it is determined that the initial stop was justified at its inception by a reasonable suspicion of criminal activity, it must further be determined whether the subsequent detention of the defendant following the stop is "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Sharpe*, 470 U.S. 675, 682, 84 L. Ed. 2d 605, 613 (1985) (quoting *Terry*, 392 U.S. at 20, 20 L. Ed. 2d at 889).

> The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.

*Royer*, 460 U.S. at 500, 75 L. Ed. 2d at 238. Where the duration or nature of the intrusion exceeds the permissible scope, a court may determine that the seizure constituted a *de facto* arrest that must be justified by probable cause, even in the absence of a formal arrest. *See Sharpe*, 470 U.S. at 685, 84 L. Ed. 2d at 615; *State v. Russell*, 84 N.C. App. 383, 389, 352 S.E.2d 922, 926, *disc. review denied*, 319 N.C. 677, 356 S.E.2d 784, *cert. denied*, 484 U.S. 946, 98 L. Ed. 2d 363 (1987); Farb, *Arrest, Search, and Investigation* 23.

Here, the trial court appears to have determined that the detention of defendant, prior to his formal arrest, did not constitute a *de facto* arrest and that, therefore, only a showing of a reasonable suspicion of criminal conduct was necessary to justify this period of detention, rather than the higher standard of probable cause. Because the trial court determined that the lesser standard of reasonable suspicion was satisfied, the trial court denied defendant's motion to suppress.

Defendant does not argue that the circumstances were insufficient to justify the investigatory stop in the first place. However, defendant argues that by placing defendant in handcuffs for approximately 15 minutes while conducting a search for the plastic bag, the

detention of defendant "exceeded the scope allowed for an investigative stop" and therefore required probable cause. Defendant further argues that prior to the time the bag was retrieved, there was no probable cause, and, for this reason, the detention was unreasonable and violated defendant's constitutional rights. Thus, defendant concludes, the denial of his motion to suppress constitutes reversible error. We believe it is unnecessary to determine whether the seizure amounted to a *de facto* arrest requiring probable cause, or merely an investigative detention requiring only reasonable suspicion of criminal activity, because even assuming *arguendo* that the seizure constituted a *de facto* arrest requiring probable cause, there was probable cause under the circumstances.

The existence of probable cause depends upon "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *State v. Bright*, 301 N.C. 243, 255, 271 S.E.2d 368, 376 (1980) (alterations in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145 (1964)). Factors which a court may consider in determining whether probable cause exists include, but are not limited to: (1) the defendant's suspicious behavior, *see State v. Bridges*, 35 N.C. App. 81, 239 S.E.2d 856 (1978); (2) flight from the officer or the area, *see State v. Zuniga*, 312 N.C. 251, 322 S.E.2d 140 (1984); (3) the discovery of what appears to be illegal contraband in the possession of the defendant, *see State v. Patrick*, 88 N.C. App. 582, 364 S.E.2d 450 (1988); and (4) a defendant's apparent effort to conceal evidence by throwing what appears to be illegal contraband from a car after realizing police presence, *see State v. Willis*, 61 N.C. App. 23, 300 S.E.2d 420, *modified and aff'd*, 309 N.C. 451, 306 S.E.2d 779 (1983).

A pertinent example of circumstances sufficient to establish probable cause is found in *State v. Harrington*, 283 N.C. 527, 196 S.E.2d 742, *cert. denied*, 414 U.S. 1011, 38 L. Ed. 2d 249 (1973). In *Harrington*, the defendant accompanied officers out of a restaurant at the officers' request and then ran from the officers and tossed away an aluminum wrapper. The Supreme Court held that under these circumstances the officers had reasonable ground to believe that a crime was being committed in their presence (i.e., probable cause), and were therefore justified in pursuing defendant, placing him under arrest, retrieving the aluminum wrapper (which was found to contain 36 bindles of heroin), and searching defendant's automobile subse-

quent to his arrest. Because there was probable cause, the items found by the officers pursuant to the defendant's arrest, including the 36 bindles of heroin, were held admissible at trial.

Here, the unchallenged findings in the trial court's order establish the following facts: defendant was seen burying a plastic bag containing a rocky, off-white substance in the woods near the trailer home park on 16 December 1998; on 18 December 1998, immediately after being told by drug agents that a drug dog would be brought to the woods, defendant was seen digging up the plastic bag that had been buried in the woods and leaving the trailer home park in his car carrying the bag in his pocket; when defendant realized that he was being followed, he sped up and threw a white plastic bag out of the car window; when the drug agents first turned on their blue light, defendant did not stop his car; defendant only stopped his car once the agents turned on their siren. We believe that at the time defendant was handcuffed, the facts and circumstances within the drug agents' knowledge and of which they had reasonably trustworthy information were sufficient to warrant the reasonable belief that defendant had committed or was committing an offense. Because there was probable cause, the seizure of defendant, whether a *de facto* arrest requiring probable cause or merely an investigatory detention requiring a reasonable suspicion of criminal activity, was not unreasonable, and any evidence resulting from that seizure was admissible at trial. Thus, the trial court properly denied defendant's motion to suppress.

No error.

Judges WYNN and TIMMONS-GOODSON concur.