McCULLOUGH, Judge.
Defendant LaTanya Rochelle Watson was charged with possession with intent to sell and deliver cocaine. Prior to trial, defendant moved to suppress the cocaine seized during a warrantless search of her person during an investigatory stop. The motion was heard at the 7 January 2004 Criminal Session of Forsyth County Superior Court. The evidence tended to show the following: At approximately 3:00 a.m. on 3 June 2003, Officer Gory Mendez, an officer with the Winston-Salem Police Department, observed defendant pressed up against the Church's Fried Chicken building, some 50 feet from the sidewalk. Officer Mendez was patrolling the area, and was immediately suspicious, because Church's was closed. There was no vehicular traffic and no one else in the area. The area was known to be a high crime area.
Concerned that there was a possible break-in occurring, the officer pulled into a nearby parking lot. Before Officer Mendez could get out of his patrol car, defendant began to walk away. Officer Mendez asked defendant to stop. When she stopped and turned around, the officer recognized her as a person from the area. Officer Mendez approached defendant and asked her where she had come from, and defendant replied that she had come from her sister's residence just two blocks away. Officer Mendez had previously arrested defendant's sister for possession with intent to sell and/or deliver cocaine and had assisted vice and narcotics officers in conducting two forcible searches into the home of defendant's sister to seize drugs and drug paraphernalia.
As Officer Mendez elicited further background information from defendant, he frisked the exterior of defendant's bag to make sure that it did not contain any weapons. During the course of this interaction, Officer Mendez noticed that defendant had an irregular, roughly spherical, hard object in her bra. The officer thought the object was crack cocaine. He also noticed that defendant seemed nervous while talking to him - stuttering, constantly looking around, and not focusing on the questions that he was asking her.
Officer Mendez called for a female officer to conduct a pat-down of defendant's clothing. Officer Meredith E. Gomez responded to the scene, whereupon she also noticed the suspicious object under defendant's bra. When Officers Mendez and Gomez asked defendant if she had any drugs or weapons on her person, defendant began to cry and stated, "Go ahead, do what you got to do." When asked again about drugs or weapons, defendant replied, "He knows, he's been looking at it all this time."
Officer Gomez then conducted a search, during which she discovered a bag of crack cocaine in defendant's bra. The encounter between defendant and Officer Mendez lasted about 20 to 30 minutes. Only about four minutes elapsed between Officer Mendez's initial request of defendant to stop and his obtaining defendant's background information. Defendant was not handcuffed during the exchange; she never asked to leave, nor did she ever state her unwillingness to talk to the officers. The officers did not display any weapons during their exchange with defendant or touch her in any way prior to the search, nor did they use a threatening tone of voice or block her path in any way to prevent her from leaving the scene.
After hearing the evidence and arguments of counsel, the court rendered judgment denying the motion in open court. The court subsequently entered an order on 9 March 2004 in accordance with its earlier ruling. Defendant thereafter pled guilty to possession with intent to sell and deliver cocaine, specifically preserving her right to appeal the denial of her motion to suppress. The court entered judgment on the guilty plea, suspending defendant's active sentence and placing her on supervised probation for 36 months. Defendant appeals.
The dispositive issue on appeal is whether the trial court erred in denying defendant's motion to suppress. "Our review of a ruling on a motion to suppress is limited to whether the trial court's findings are supported by competent evidence and whether those findings support its ultimate conclusions." State v. McHone, 158 N.C. App. 117, 120, 580 S.E.2d 80, 83 (2003). In this case, our review is further limited, however, by defendant's failure to assign error to any of the trial court's findings of fact. The court's findings are, therefore, presumed correct and are binding on this Court on appeal. See Okwara v. Dillard Dep't Stores, Inc., 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000)("Where findings of fact are challenged on appeal, each contested finding of fact must be separately assigned as error, and the failure to do so results in a waiver of the right to challenge the sufficiency of the evidence to support the finding."). To that end, our review is limited to a determination as to whether the trial court's findings support its conclusions of law.
In the case sub judice the trial court made some 30 findings of fact, which are presumed correct and are binding on this Court.
Based upon those findings, the trial court concluded
that the State has proven by a preponderance of the evidence that based on the totality of the circumstances, Officer Mendez had a reasonable articulable suspicion to stop and talk to the defendant to see if she were [sic] involved in some type of crime;
1. That Officer Mendez's initial encounter with the Defendant was consensual;
2. That after Officer Mendez stopped the defendant he developed probable cause to search the Defendant based on among other things: his knowledge of her and her sister; the time of night; his observation of the lump on the Defendant's left breast area; the defendant's nervousness; his belief that the object was crack cocaine based on his training and experience; and the high crime area they were in;
And, THEREFORE, based on the foregoing findings of fact the Court CONCLUDES AS A MATTER OF LAW that the search conducted was done with probable cause and the Defendant's motion to Suppress the crack cocaine seized from the Defendant is hereby denied[.]
Defendant contends that the trial court erred in so concluding. We disagree.
The Fourth Amendment to the United States Constitution, as applied to the states by the Due Process Clause of the Fourteenth Amendment, prohibits only unreasonable searches and seizures. State v. Grooms, 353 N.C. 50, 73, 540 S.E.2d 713, 727-28 (2000), cert. denied, 534 U.S. 838, 151 L. Ed. 2d 54 (2001). Consensual searches are not considered "unreasonable within the meaning of the Fourth Amendment," so long as consent to search is given freely and intelligently. State v. Smith, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997); see also N.C. Gen. Stat. § 15A-221 (2003) (providing that a law enforcement officer may conduct a search and seizure, without a warrant or other authorization, if consent to search is given). "[T]he question whether a consent to a search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 862-63 (1973).
[P]olice officers may approach individuals in public places "to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate." The Court further explains that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." Such encounters are considered consensual by the Court and no reasonable suspicion is necessary.
State v. Pittman, 111 N.C. App. 808, 811, 433 S.E.2d 822, 823-24 (1993)(quoting Florida v. Bostick, 501 U.S. 429, 431, 115 L. Ed. 2d 389, 396 (1991)). "[The U.S. Supreme] Court has found that '[c]ommunications between police and citizens involving no coercion or detention are outside the scope of the fourth amendment.'" Id. (quoting State v. Thomas, 81 N.C. App. 200, 205, 343 S.E.2d 588, 591, disc. review denied, 318 N.C. 287, 347 S.E.2d 469 (1986)).
Moreover, it is well settled that a brief investigatory stop of an individual is permissible under the Fourth and Fourteenth Amendments if there exists reasonable, articulable suspicion to show that criminal activity is afoot. State v. Milien, 144 N.C. App. 335, 339, 548 S.E.2d 768, 771 (2001). Reasonable suspicion is to be determined by the totality of the circumstances, viewed through the eyes of a reasonable, cautious police officer.
A more intrusive search and seizure requires probable cause. See Milien, 144 N.C. App. at 340, 548 S.E.2d at 772 ("Where the duration or nature of the intrusion exceeds the permissible scope, a court may determine that the seizure constituted a de factoarrest that must be justified by probable cause, even in the absence of a formal arrest."). "The existence of probable cause depends upon 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Milien, 144 N.C. App. at 341, 548 S.E.2d at 772 (quoting State v. Bright, 301 N.C. 243, 255, 271 S.E.2d 368, 376 (1980) (alterations in original)). The Court gave several factors "which a court may consider in determining whether probable cause exists," including "(1) the defendant's suspicious behavior, see State v. Bridges, 35 N.C. App. 81, 239 S.E.2d 856 (1978); (2) flight from the officer or the area, see State v. Zuniga, 312 N.C. 251, 322 S.E.2d 140 (1984); [and] (3) the discovery of what appears to be illegal contraband in the possession of the defendant, see State v. Patrick, 88 N.C. App. 582, 364 S.E.2d 450 (1988)[.]" Id.
In the instant case, Officer Mendez's initial stop of defendant was permissible as a public exchange between an officer and an individual. Here, the officer merely approached defendant with the intent to inquire about her reason for being outside of the closed Church's restaurant. At the time that Officer Mendez originally decided to initiate contact with defendant, he did not know the person's sex or identity. Indeed, though he suspected a possible break-in, there was not any direct evidence to support that belief.
We further conclude that the circumstances surrounding the stop also support an investigatory stop based upon reasonable, articulable suspicion. A person pressed against the outside of a closed business in a high-crime area at 3:00 a.m. would certainly give a reasonably prudent officer of Officer Mendez's experience that quantum of suspicion to justify an investigatory stop.
During that stop, after conducting a pat-down of a bag defendant was carrying, and obtaining some biographical information, Officer Mendez observed what appeared to be crack cocaine secreted in defendant's bra. The officer noticed that defendant was stuttering, looking around nervously, and was just not being attentive to the questions that he was asking. In addition, Officer Mendez knew that defendant's sister, who lived nearby, was a drug dealer. At this point, Officer Mendez had probable cause to believe that defendant was in possession of a controlled substance, which would justify a lawful arrest. The officer called for assistance. Officer Gomez responded to the scene, where she too observed what appeared to be crack cocaine on defendant's person. When Officer Gomez asked defendant if she could search her, defendant told her to "do what you got to do." Defendant also said, "he [referring to Officer Mendez] knows, he's been looking at it [referring to the crack cocaine in her bra] all this time." We believe that defendant's statements constituted consent.
Contrary to defendant's argument, there was no showing on this record of duress or coercion by the officers. But even assuming arguendo there was evidence to support a finding of duress or coercion so as to negate the consensual nature of the initial exchange with Officer Mendez or the voluntary and knowing nature of defendant's consent to search, we conclude that the search was still proper in that the investigatory stop was based upon reasonable, articulable suspicion and the search was justified properly based upon probable cause.
In light of our conclusion in this regard, the trial court's conclusions, which are duly supported by its findings, were proper. The court's decision to deny defendant's motion to suppress the crack cocaine seized from her person is, therefore, affirmed.
Affirmed.
Chief Judge MARTIN and Judge CALABRIA concur.
Report per Rule 30(e).